UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CIVIL ACTION NO.: 1:17-CV-611 (WOB-SKB)

SHERRY LAAKE,                                          PLAINTIFF

VS.            <u>MEMORANDUM OPINION AND ORDER</u>

THE BENEFITS COMMITTEE,
WESTERN & SOUTHERN FINANCIAL
GROUP COMPANY FLEXIBLE BENEFIS
PLAN, ET AL.                                          DEFENDANTS

This is a lawsuit filed by Sherry Laake against The Benefits Committee, Western & Southern ("W&S") Financial Group Company Flexible Benefits Plan and W&S Financial Group Company Flexible Benefits Plan (the "Plan") for improper denial of long-term disability benefits under ERISA. (Docs. 1; 54).

Laake alleges that Defendants improperly denied her long-term disability benefits. Plaintiff initially brought her denial of benefits claim in federal court in September 2017. (Doc. 1). In February 2019, this Court found the Defendants' decision to deny Plaintiff benefits was arbitrary and capricious. (Doc. 28). On remand, Defendants again denied Laake long-term disability benefits, prompting Laake to reopen this case in February 2020. (Doc. 41).

After a period of discovery, the parties have now filed Cross-Motions for Judgment on the Administrative Record. (Docs. 94;

95). Plaintiff has also filed a Motion for Summary Judgment (Doc. 98), a Motion to Strike Deposition Errata Sheets (Doc. 101), and a Motion and Supplemental Motion for Attorney's Fees and Costs. (Docs. 31; 40). Having reviewed this matter and concluding that these motions are appropriate for resolution without oral argument, the Court now issues the following memorandum opinion and order.

### Factual and Procedural Background

### A. The Plan Terms

The Plan at issue is an employee welfare benefit plan governed by ERISA. (Doc. 28 at 1). At all times relevant, Plaintiff was a covered beneficiary under the terms of the Plan. (*Id.*). The Plan provides for long term disability ("LTD") benefits, which it defines as follows:

> Long Term Disability or Long Term Disabled shall mean for the first 24 months after the expiration of Temporary Disability, the complete and continuous incapacity of such Covered Employee to perform all of the material duties of any occupation for which he is or may reasonably become qualified based on his education, training, or experience. After the expiration of 24 months of Long Term Disability, Long Term Disability or Long Term Disabled shall mean the complete and continuous incapacity of the Covered Employee, to engage in any and every occupation, business or employment, including self employment, for wages, compensation or profit.

(Doc. 78 at 63-64). The plain terms of the Plan show that for the first 24 months, W&S will evaluate long term disability benefits

using one standard, and then employ a different standard if the disability extends beyond 24 months.

There are some exceptions to LTD benefits. The exception applicable to this case states:

> § 7.6: No benefits shall be paid for any period of Long Term Disability: (j) where the Long Term Disability extends beyond 24 months and is caused by a condition or disorder excluded from the definition of Mental Illness in Section 2.37. (See Schedule C)[.]

(*Id.* at 95-96). Schedule C lists Chronic Pain Syndrome as an exception. (*Id.* at 207-08).

### B. Plaintiff's History Under the Plan

Plaintiff filed for LTD benefits in August 2016, claiming she was disabled due to rheumatoid arthritis, which caused her severe pain. (Doc. 28 at 2). W&S sent questionnaires to Plaintiff's physicians asking about her condition. (*Id.*). Plaintiff's rheumatologist, neurologist, and immunologist all said Plaintiff met the definition of long-term disabled, and only her neurologist said Plaintiff could work in sedentary positions in about three to four months. (*Id.* at 3).

At the time, these physicians diagnosed Plaintiff with a variety of ailments. Her rheumatologist, Dr. Muntel, diagnosed her with inflammatory arthritis, chronic foot pain, low back pain, and chronic pain in general. (*Id.*). Dr. Muntel also noted that Plaintiff's pain "frequently seems out of proportion to exam." (*Id.*). Her neurologist, Dr. Stillwagon, diagnosed Plaintiff with

3

pelvic somatic dysfunction and myofascial muscle pain, chronic pain, and right low back pain. (*Id.*). Her immunologist, Dr. Bernstein, diagnosed her with mixed rhinitis, myofascial pain, and chronic arthritis. (*Id.* at 4). Finally, her orthopedist, Dr. Eisele, diagnosed her with rheumatoid arthritis, synovitis, and unspecified synovitis. (*Id.*).

Initially, the Benefits Department found that Plaintiff's disability was due to chronic pain, and therefore, her disability payments were limited by § 7.6 of the Plan to only the 24-month period. (*Id.*). In the denial letter, Defendants did not cite the specific exception that would cause Plaintiff's benefits to terminate in October of 2018. (*Id.*). Chronic pain is not a limitation under § 7.6 of the Plan.

Plaintiff appealed the decision. W&S referred her case to Medical Care Management Corporation ("MCMC"), where Dr. Kramer, a rheumatologist, performed an independent review. (*Id.*). Dr. Kramer diagnosed her with atypical inflammatory arthritis, not chronic pain. (*Id.* at 5). However, she found that Plaintiff could sit without pain and could therefore work under certain limitations. (*Id.*). The Benefits Appeal Committee considered Dr. Kramer's analysis, along with the documentation Plaintiff initially submitted, and found that she was disabled because of pain. (*Id.*). Thus, her disability benefits would terminate after 24 months, in October 2018.

4

## C. Initial District Court Decision

Plaintiff timely brought her denial of benefits claim in federal court in September 2017. (Doc. 1). In February 2019, this Court reviewed Defendants' denial of benefits under the arbitrary and capricious standard. (Doc. 28 at 5).

This Court made several findings. First, W&S did not cite any specific provision of the Plan as the basis for its decision. Because the Plan provision that applied was an exclusion, W&S had the burden to show it was satisfied. (*Id.* at 6). Second, the Court also found that there was no evidence that Plaintiff suffered from Chronic Pain Syndrome. Although physicians had routinely diagnosed Plaintiff with various forms of chronic pain, none of them ever used the term Chronic Pain Syndrome. (*Id.* at 7). This diagnosis required a psychological basis, which no physician ever found consistent with her symptoms. Furthermore, W&S never asked any of Plaintiff's physicians for their professional opinion on Chronic Pain Syndrome, and W&S's independent review physician even discounted the idea that she suffered from Chronic Pain Syndrome. (*Id.*). Third, W&S applied the unable to perform "any and every" occupation standard when initially determining benefits, and did not wait until after 24 months had passed. (*Id.* at 9).

The Court therefore found that W&S's decision was arbitrary and capricious under the terms of the Plan. The Court remanded the case to allow for W&S to properly evaluate Plaintiff's claim. (*Id.*

at 10). The Court also denied Plaintiff's request for attorney's fees (*Id.* at 12–13), but later granted Plaintiff's request for leave to file for attorney's fees again. (Doc. 32). W&S appealed the decision to the Sixth Circuit, but the case was ultimately dismissed for lack of subject matter jurisdiction because the remand and attorney's fees determinations were not final and appealable decisions. *Laake v. Benefits Committee, W&S Financial Group Company Flexible Benefits Plan, et al.*, 793 F. App'x 413, 415 (6th Cir. 2019).

### D. On Remand

Despite the pending appeal before the Sixth Circuit, W&S did not obtain a stay. (Doc. 33). The Court remanded the case on February 21, 2019 (Doc. 28), yet W&S did not contact Plaintiff until May 2019 after Plaintiff inquired about the status of her claim. (Doc. 76 at 246–53). When W&S finally responded to Plaintiff, it asked for: (1) an updated HIPAA release; (2) a list of Plaintiff's health care providers since August 2016; and (3) all additional medical information from October 2016 to October 2018. (*Id.*). Plaintiff sent Defendants the requested information, and also included all medical records through February of 2019. (*Id.*).

In September 2019, W&S again sent Plaintiff's file to Dr. Kramer, the independent medical reviewer. (Doc. 77 at 437–43). W&S limited the evidence Dr. Kramer reviewed to only those medical

records dated through October of 2018. (*Id.*). Dr. Kramer's report indicated that Plaintiff could sit without restriction, stand for about an hour per eight-hour workday, and hold negligible weight. (*Id.* at 440–41). She also discussed Plaintiff's frequent infections while on her pain medication, as well as the likelihood of decreased functionality when she has flare ups, which occur every two to three months. (*Id.* at 440). Dr. Kramer ultimately determined that Plaintiff was not disabled under the terms of the Plan. (*Id.*).

The following individuals then reviewed Plaintiff's claim using all evidence Plaintiff submitted and ultimately denied her benefits: Stephen Hussey, Dr. Keith Clark, Dr. Koester, Susan Reed, R.N., Lori Ohmer-Mitchell, R.N., Diane Burger, R.N., and Megan Rachford, R.N. (Doc. 77 at 445). W&S then sent Plaintiff a denial letter on November 14, 2019—almost ten months after the Court remanded Plaintiff's claim, well beyond the forty-five-day deadline set forth by ERISA. 29 CFR § 2560.503-1(f)(3). (*Id.* at 445–49).

Following the November 14, 2019 denial, Plaintiff requested from W&S all "relevant" documents to her claim. (*Id.* at 461–62). Defendants did not respond until February 6, 2020, two days after Plaintiff reopened this case in federal court. (*Id.* at 472). W&S finally produced the Trust Agreement on September 10, 2020. (Doc. 96, Danzl Decl. at ¶ 6).

## E. Reopening of the Case

On February 4, 2020, Plaintiff moved the Court to reopen the case (Doc. 41), to which Defendants objected. (Doc. 45). Defendants argued that Plaintiff was required to exhaust her administrative remedies before moving to reopen the case. (*Id.* at 5). The Court noted that the district court retains jurisdiction to review a denial of benefits following a remand order, and because Defendants disregarded the deadlines set forth in ERISA, Plaintiff was not required to appeal to W&S. (Doc. 53).

Plaintiff's Motion to Reopen was granted. (*Id.*). She filed an Amended Complaint on June 19, 2020. (Doc. 54). In it, she brings two claims: (1) improper denial of benefits in violation of ERISA and (2) failure to produce plan documents in violation of ERISA. (*Id.*). The magistrate judge allowed for discovery of material outside the administrative record because of the procedural defects alleged in Plaintiff's complaint. (Doc. 65).

Meanwhile, the parties continued with the administrative process. Plaintiff appealed her denial of benefits and was denied again on September 1, 2020. (Docs. 77 at 511–17; 95 at 16). W&S produced the administrative record as part of the discovery process. This September 1, 2020 letter was included in the record. (*Id.*). Also included in the record was a review by a second independent rheumatologist, Dr. Liarski, conducted after this case was reopened. (*Id.* at 503–10). The denial letter consistently

8

referenced his opinion letter. (*Id.* at 511–17). Following this latest denial of long term disability benefits, Plaintiff again requested on November 10, 2020, via discovery request, documentation showing the delegation of authority and that W&S was complying with its own rules and regulations. (Doc. 74-2 at 113–18).

Plaintiff filed her Motion for Attorney's Fees and Costs on March 13, 2019, and her Supplemental Motion for Attorney's Fees on January 24, 2020. (Docs. 31; 40). The Court declined to rule on these motions until a final decision had been reached. The parties filed Cross-Motions for Judgment on the Administrative Record on June 23, 2021. (Docs. 94; 95). Plaintiff also filed her Motion for Summary Judgment on July 22, 2021–almost a month after the dispositive motion deadline. (Doc. 98). Plaintiff then filed a Motion to Strike Deposition Errata Sheets on August 2, 2021. (Doc. 101). In each filing, the opposing party timely filed their Response, and the moving party filed their Reply.

### *ANALYSIS*

#### A. LTD Benefits Determination

#### i. The Administrative Record

As an initial matter, the Court addresses arguments from both parties about limiting the administrative record.

First, Plaintiff argues that the documents included in the administrative record that were issued after the case was reopened

should be excluded from the Court's consideration because they are post-litigation rationalizations. (Doc. 95 at 24-26). This includes an opinion letter from Dr. Liarski that was issued on June 16, 2020 and W&S's undated denial letter of Plaintiff's appeal received on September 1, 2020. (*Id.*).

The Sixth Circuit has held that a court may consider the evidence "at the time the final decision was made." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). Because the Court already determined that the administrative appeal was unnecessary to reopen the case, it therefore follows that the "final" decision that the Court is considering is the denial dated November 14, 2019. (*See* Doc. 53). The Supreme Court has said that, "the regulations merely state that a claim may be treated as having been denied after the 60- or 120- day period has elapsed . . . . This provision thus enables a claimant to bring a civil action to have the merits of [her] application determined, just as [she] may bring an action to challenge an outright denial of benefits." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). Additionally, the Sixth Circuit has written:

> [I]t strikes us as problematic to, on one hand, recognize an administrator's discretion to interpret a plan by applying a deferential 'arbitrary and capricious' standard of review, yet, on the other hand, allow the administrator to 'shore up' a decision after-the-fact by testifying as to the 'true' basis for the decision after the matter is in litigation . . . .

*Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n.7 (6th Cir. 2000).

The case here is a straightforward application of these principles. First, W&S waited over 270 days from the Court's remand to issue an initial decision regarding Plaintiff's claims. (Doc. 53 at 5). Aside from this being egregious, Plaintiff was in the right to consider her claim denied at this point. *See Russell*, 473 U.S. at 144. Hence, she properly moved to reopen this action in February 2020 and the Court granted the motion in June 2020. (Doc. 53). Second, Dr. Liarski's opinion letter is much more thorough than Dr. Kramer's opinion letter, going further in-depth about his disagreements with Plaintiff's current treatment plan and speculating that a different approach would help her pain. (Doc. 77 at 507). Dr. Liarski's analysis also provides a much more thorough explanation as to why he believes Plaintiff could perform sedentary work and applied Plaintiff's conditions to the Plan terms. (*Id.* at 506-07). Third, W&S's denial letter received September 1, 2020 relies heavily on Dr. Liarski's analysis to justify denying Plaintiff's claims and has nearly two more pages of explanation as to why W&S denied her claim when compared to the November 2019 letter. (*Compare* Doc. 77 at 511-17 *with id.* at 445-49).

Courts require insurance companies to explain why they are denying a claimant benefits. *Moore v. Lafayette*, 458 F.3d 416,

436 (6th Cir. 2006). Plans are only required to substantially comply with ERISA. *Id.* But here, W&S knew it was being sued by Laake for a second time. It curated another physician's opinion and then used that opinion to craft a carefully worded denial letter after litigation had already commenced to ensure substantial compliance with ERISA. This is very clearly a post-litigation rationalization. *See Univ. Hosp. of Cleveland*, 202 F.3d at 848 n.7. Accordingly, it should not be considered as part of the administrative record.

Second, Defendants argue the Court should only consider Plaintiff's medical evidence dated through October 2018 as part of the administrative record. Defendants explained "[b]ecause the question [on remand] is whether Ms. Laake met the Plan's definition of Long Term Disability as of October 2018, only those records reflecting Ms. Laake's condition through October 2018 are relevant to the inquiry." (Doc. 77 at 445). The Defendants are incorrect about this limitation. Remands from district courts are to be treated as an appeal from an adverse benefit determination. *See Stiers v. AK Steel Benefits Plans Admin. Comm.*, No. 07-145, 2008 WL 1924252, at *6 (S.D. Ohio Apr. 29, 2008). On appeal, the claimant can provide additional evidence of his or her disability. 29 C.F.R. § 2560.503-(1)(h)(2)(ii)-(iv). Plaintiff supplied additional information of her disability through February of 2019, when the Court remanded the case.

"In an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'r, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). It appears Defendants considered different medical evidence at different points on remand. W&S never asked Plaintiff for medical records dated after October 16, 2018. (Doc. 76 at 246–51). The Benefits Committee only supplied Dr. Kramer with medical records through October of 2018. (Doc. 77 at 437–43). But by W&S's own admission, the Benefits Department considered all medical records Plaintiff submitted for the November 2019 denial. (Doc. 94-1; Response to Interrog. No. 3). Therefore, this Court can consider all the medical evidence Plaintiff submitted.[1]

### ii. Standard of Review

Next, Plaintiff argues for a *de novo* review of the record. Specifically, she argues that Defendants impermissibly delegated discretionary authority under the Plan. (Doc. 95 at 26–29). Defendants argue that the Plan allows them to grant discretionary authority to anyone they deem fit. (Doc. 99 at 10–13).

Generally, courts review denial of benefit actions *de novo* unless the plan in question grants discretionary authority to

---

[1] This is largely immaterial because even the evidence dated before October 2018 shows Plaintiff was disabled under the terms of the Plan.

determine eligibility for benefits to the administrator.
*Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989).
If such a grant of discretionary authority exists, then courts
review decisions under an arbitrary and capricious standard. *Id.*
However, "when the benefits decision 'is made by a body other than
the one authorized by the procedures set forth in a benefits plan,'
federal courts review the benefits decision *de novo*." *Shelby Cty.*
*Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th
Cir. 2009) (quoting *Sanford v. Harvard Indus. Inc.*, 262 F.3d 590,
597 (6th Cir. 2001)).

Plaintiff argues that the Benefits Committee impermissibly
delegated authority to the Benefits Department. (Doc. 95 at 26–
29). This argument is well-taken. Neither party disputes that
the Plan grants discretion to the "Benefits Committee." (Doc.
78 at 156). The Plan states that "all action" by the Benefits
Committee must be taken by a majority vote of a quorum of members
of the Benefits Committee. (*Id.*). However, Plaintiff argues that
these procedures were not followed. Specifically, Plaintiff
points to the individuals listed in attendance at the October 10,
2019 meeting on the disability evaluation for Laake's claim for
benefits. (Doc. 95-1, Resp. to Interrog. 3 at 2–3). In
attendance, there were multiple individuals who voted to deny
Plaintiff's benefits but who are not actually members of the
Benefits Committee. (*Id.*).

14

Defendants respond by arguing that this is accounted for in the Plan, which grants the Benefits Committee broad discretionary authority:

> To appoint or employ the Benefits Department and any individuals to assist in the administration of the Plan . . . and any other agents it deems advisable, including legal, accounting, and actuarial counsel.

(Doc. 78 at 157).

The word "assist" means: "To help, aid, succor, lend countenance or encouragement to; **participate in as an auxiliary**. To contribute effort in the complete accomplishment of an ultimate purpose intended to be effected by those engaged." *Assist*, BLACK'S LAW DICTIONARY (5th ed. 1983) (emphasis added). Assist does not mean to join or be a part of. The terms of the Plan allow the Benefits Committee to receive contributions from anyone it deems fit. But it does not permit the Benefits Committee to confer voting rights to others for the purposes of official actions. Any individual is permitted to assist, but assist does not mean that the individual can become a part of the Benefits Committee.

The group that met on October 10, 2019, was comprised of individuals that had a right to contribute to the meeting discussion. However, nothing in the Plan shows that members not a part of the Benefits Committee had a right to vote on claims. Defendants, in their interrogatories, responded that the following individuals attended the October 10, 2019 meeting where Ms. Laake's

benefits were reviewed and decided: Stephen Hussey, Jr.; Lori Ohmer-Mitchell, R.N.; Megan Rachford, R.N.; Diane Burger, R.N.; Susan Reed, R.N.; Dr. Keith Clark, M.D.; Dr. Theresa Koester, M.D.; Michael Altenau; Patricia Donohoo; Liz Tabeling; John Kasising; and Tracy Bickers (Doc. 95-1, Resp. to Interrog. 3 at 2-3). The Benefits Committee at the time was comprised of Donald Wuebbling, Stephen Husey, Jr., Linda Lake, Jeffrey Meek, Daniel Harris, and Dr. Keith Clark. (*Id.* at 3). By Defendants' own admission, only two members of the Benefits Committee were in the meeting about Ms. Laake's claim. This was not enough to form a quorum to vote as to what action to take on Ms. Laake's claim. (Doc. 78 at 156). Yet Hussey testified in his deposition that "the group" met on October 10, 2019 and "determined that Ms. Laake was not long-term disabled." (Doc. 81, Hussey Dep. at 138:5-8).[2]

Hussey's deposition testimony also shows the W&S consistently blurred the lines between the Benefits Committee and the Benefits Department. For example, when asked who at the October 18, 2016 meeting decided to approve the initial 24 months of disability to Ms. Laake, Hussey answered, "All members of the meeting . . . That was the determination of the group." (*Id.* at 73:6-16). Hussey

---

[2] Defendants claim that Michael Altenau, Patricia Donohoo, Liz Tabeling, and Tracy Bickers attended the meeting but did not offer an opinion on whether Plaintiff's LTD remand should be granted. (Doc. 95-1, Resp. to Interrog. 3 at 2-3). Even if this were true, it would not change the analysis. There were still plenty of individuals who were voting on Plaintiff's LTD benefits but who had not been granted authority to do so by the Plan.

16

also testified in his deposition that the Benefits Department, not the Benefits Committee, decides a claimant's eligibility for benefits. (*Id.* at 31:8-21).

Defendants cite to a case from the Eastern District of Tennessee to argue that discretionary authority can be delegated in a plan. *Nelson v. Unum Group Corp.*, No.: 1:13-cv-58, 2014 WL 3908183, at *8 (E.D. Tenn. Aug. 11, 2014). The Court agrees with Defendants that the Plan can delegate authority, but such a delegation must be unequivocally clear. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). "While 'magic words' are unnecessary to vest discretion in the plan administrator . . . this circuit has consistently required that a plan contain a clear grant of discretion to the administrator to determine benefits or interpret the plan." *Id.* (internal quotations omitted). The word "assist" does not clearly grant discretion.

Defendants' argument that the Plan allows the Benefits Committee to delegate authority is simply unpersuasive. Individuals who are permitted to "assist" in administration of a Plan cannot hold the same authority as those who have been delegated the authority to administer the Plan. "Administer" and "assist in administration" are not the same thing. Accordingly, the Court agrees with Plaintiff that *de novo* review is appropriate because the Court must consider who made the benefit determination as part of its review.

17

### iii. Plaintiff is Disabled Under the Terms of the Plan

a. *De Novo* Standard

*De novo* review is a non-deferential standard of review. This means that the Court will not defer to W&S's findings or plan interpretations. *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). The Court takes "a fresh look at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). The review is confined to the administrative record as it existed when W&S issued its final determination upholding the termination of Plaintiff's benefits. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th. Cir. 2005). The Court may consider both quantity and quality of the evidence that the plan administrator considered when making its decision. *See Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 503 (W.D. Mich. 2006) (citing *Smith v. Unum Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir. 2002)). In its evaluation, the Court decides whether it agrees with the Plan administrator's decision. *Perry*, 900 F.2d at 966.

b. Meaning of "Proof" Under the Plan

After the initial 24-month period, the Plan defines LTD as, "the complete and continuous incapacity of the Covered Employee, to engage in any and every occupation, business or employment, including self-employment, for wages, compensation or profit."

18

(Doc. 78 at 63-64). Disability benefits are further limited "where the Long Term Disability extends beyond 24 months and is caused by a condition or disorder excluded from the definition of Mental Illness in Section 2.37." (*Id.* at 96). In Section 2.37, the Plan excludes from the definition of "Mental Illness" Chronic Pain Syndrome. (*Id.* at 96; 207). W&S may also limit disability benefits if the claimant "fails or refuses to furnish proof of Long Term Disability as required by the Benefits Department, refuses to be examined, or refuses to provide any release required by the Benefits Department." (*Id.* at 95).

The parties disagree as to what the term "proof" means under the Plan. Defendants argue that proof requires that Plaintiff submit objective medical evidence of her disability. (Doc. 94 at 24-27). Plaintiff argues that the Plan does not require this higher threshold of evidence. (Doc. 100 at 3-5).

The Court is inclined to agree with Plaintiff. Nowhere in the Plan is the term "proof" defined. The Fourth Circuit has defined proof not to require objective medical evidence, but rather proof that is "objectively satisfactory." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir. 2002). When proof has not been defined, district courts in the Sixth Circuit have also considered subjective evidence, including the insured's self-reported evidence. *See James v. Liberty Life Assurance Co. of Boston*, 984 F. Supp. 2d 730, 739-40 (W.D. Mich. 2013). But

courts will still give weight to evidence "in accordance with the supporting medical tests and objective findings that underline the opinion." *Crider*, 458 F. Supp. 2d at 505. Accordingly, the Court should consider any objective evidence Plaintiff has provided but may also consider self-reported and subjective evidence submitted by the Plaintiff.

### c. Plaintiff's Chronic Pain Syndrome Diagnosis

Another one of Defendants' arguments is that Plaintiff has been diagnosed with Chronic Pain Syndrome, and this in effect removes her from disability eligibility under the terms of the Plan. (Doc. 94 at 16). Plaintiff argues that she was never diagnosed with Chronic Pain Syndrome. (Doc. 54 at ¶15). Plaintiff is mistaken—she was clearly diagnosed with Chronic Pain Syndrome during a May 2018 visit with Dr. Muntel. (Doc. 76 at 497). But this does not mean that Plaintiff's claims fail.

The terms of the Plan dictate that to be ineligible for benefits, the claimant's Chronic Pain Syndrome "caused" the long term disability. (Doc. 78 at 96). Defendants' argument has a few notable flaws. First, the word "cause" means "[t]o be the cause or occasion of; to effect as an agent; to bring about; **to bring into existence**; to make to induce; to compel." *Cause*, BLACK'S LAW DICTIONARY (5th ed. 1983) (emphasis added). Plaintiff's first time being diagnosed with Chronic Pain Syndrome was in 2018, nearly two years after W&S had initially awarded her long term disability

benefits. Although the Plan has two different standards of proof for determining the continuation of disability benefits after 24 months, the Plan does not call for the redetermination of her disability. Because Chronic Pain Syndrome was diagnosed after Plaintiff was already deemed to be disabled, it cannot be said now that Chronic Pain Syndrome "caused" her disability. Furthermore, when Plaintiff was initially awarded disability benefits, Dr. Muntel specifically disavowed Chronic Pain Syndrome, explaining it would not explain Plaintiff's response to prednisone. (Doc. 76 at 154). Plaintiff was diagnosed with a plethora of other ailments that also could have caused her disability.

Second, the evidence of Chronic Pain Syndrome is minimal and peripheral at best. Dr. Muntel diagnosed Plaintiff with Chronic Pain Syndrome in May of 2018. (*Id.* at 497). However, in the subsequent visits, Dr. Muntel makes no mention of Chronic Pain Syndrome again in her patient visit notes. (*See* Doc. 76 at 269–76; 483–89; 498–501; Doc. 77 at 6–13; 14–21). Furthermore, Chronic Pain Syndrome requires psychological factors to play a part in the onset of pain. (Doc. 28 at 6). In the visit where Dr. Muntel diagnosed Plaintiff with Chronic Pain Syndrome, there was no discussion of any mental illness, such as anxiety or depression. (Doc. 76 at 490–97). Although the Court itself is not a physician, the Court notes the lack of discussion from Dr. Muntel about Plaintiff's Chronic Pain Syndrome diagnosis. Given the weight of

the evidence showing Plaintiff was diagnosed with a host of other ailments, the Court does not find Dr. Muntel's diagnosis dispositive.

d. Plaintiff's Ability to Perform "Any" Job

The primary question then comes down to whether Plaintiff can perform sedentary work. Defendants argue that she can; Plaintiff argues that she cannot. After a full review of the administrative record, the Court concludes that Laake is not able to perform sedentary job functions.

Regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).[3] Walking and standing "occasionally" has been found by the Sixth Circuit to mean up to one-third of the time. *Creech v. Unum Life Ins. Co. of N. Am.*, 162 F. App'x 445, 451 n.10 (6th Cir. 2006); *see also Wages v. Secretary of Health and Human Servs.*, 755 F.2d 495, 498 (6th Cir. 1985) (finding that "occasionally" meant at least two hours of an eight hour workday).

---

[3] The Court takes judicial notice of this definition. *Brooking v. Harford Life and Acc. Ins. Co.*, 167 F. App'x 544, 548 (6th Cir. 2006).

After reviewing the Administrative Record, the Court notes there are two competing physician views at play: those of the treating physicians and those of W&S's independent medical reviewers. The Supreme Court has held that ERISA does not require plan administrators to accord special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003). Still, "a plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Evans v. Unum Provident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).

Plaintiff is diagnosed with seronegative inflammatory arthritis, which results in widespread joint pain that can be sporadic. (Doc. 77 at 439–40). Dr. Muntel has noted that Plaintiff's condition is marked by unpredictable and cyclical flare-ups, during which she must go off the medication that helps manage her pain. (*Id.* at 440). As Dr. Muntel explained to Dr. Kramer, W&S's independent physician reviewer, Plaintiff has recurrent sinus infections and bronchitis every two to three months while taking Xeljanz, the medication that seems to help Plaintiff's pain the most. (*Id.* at 439–40). When Plaintiff is forced to go off Xeljanz because of these infections, her inflammatory arthritis is exacerbated. (*Id.*).

Defendants argue that Plaintiff is not limited in her upper body movement and ability to type. Dr. Kramer declared that

23

Plaintiff "is not restricted in the use of her hands. She can reach at any level." (*Id.* at 441). Defendants primarily point to July and October 2018 visits with Dr. Muntel where she observed that Plaintiff had minimal wrist fullness and tenderness with 100% fists and no obvious hand synovitis or PIP tenderness. (*Id.* at 8; 16). But this cherry-picks Plaintiff's medical records. For example, despite Dr. Muntel observing no PIP tenderness in Plaintiff's July 2018 visit, she did observe right hand first and second digit tenderness in a February 2019 visit. (*Id.* at 289). The Court also notes Plaintiff's right shoulder bursitis diagnosis. (Doc. 76 at 464). She was also diagnosed with cervical spinal stenosis and degenerative arthropathy of the spinal facet joint in February 2017. (*Id.* at 441). Dr. Muntel has also consistently noted that Plaintiff has pain associated with her elbows when she evaluates her range of motion. (*Id.* at 484; 492; 500). She also has observed fullness in Plaintiff's wrists which causes her pain. (*Id.* at 439; 477; 484; 492). Given the pain that Plaintiff has in her upper extremities and the objective evidence of such pain in Plaintiff's medical records, Plaintiff is restricted in the use of her hands. She cannot reach any level, at least not without pain and discomfort.

Perhaps most compelling is Dr. Kramer's finding that Plaintiff is limited to walking and standing fifteen minutes at a time with a maximum ability to do so for up to one hour in an

eight-hour workday. (Doc. 77 at 441). Sedentary jobs require an individual to be able to stand and walk for at least two hours of the eight-hour workday. *Wages*, 755 F.2d at 498. Moreover, Dr. Kramer notes that "this functionality will be reduced even further during [Plaintiff's] frequent episodes of disease exacerbation due to medication discontinuation." (*Id.*). Meaning, Plaintiff's already limited ability to walk and stand is reduced periodically. On Plaintiff's best day, she cannot meet the physical requirements for sedentary work let alone the periodic physical condition she will be in because she is forced off her management medication.

Also compelling is Dr. Muntel's evaluation of Plaintiff's ability to work as of October 2018. Dr. Kramer's notes state that Dr. Muntel "expressed the claimant would not be able to hold down a job since she has sinus infections every couple of months causing discontinuation of her medications and exacerbation of the arthritis, especially her ankles." (*Id.* at 440). Dr. Muntel further commented that Plaintiff "would not be able to work for several weeks at a time until her arthritis stabilized after restarting anti-arthritis medication . . . ." (*Id.*). Dr. Muntel also noted that although Plaintiff's hip surgery was successful, the source of the Plaintiff's pain has always been her ankles. (*Id.*). This comment goes on to discredit many of the arguments made by Defendants that argue Plaintiff's pain was improved after a successful hip surgery. Her hip was not the major source of

pain.  So, alleviating some of the pain from her hip did not solve the problem.  (*Id.*).

Given the evidence, the Court confidently concludes that Plaintiff was disabled under the terms of the Plan as of October of 2018.[4]  Plaintiff is incapable of performing sedentary work. She is unable to work any occupation.  Accordingly, Plaintiff is entitled to reinstatement of benefits and back pay.  *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 609 (6th Cir. 2014).  For the above reasons, Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED**, and Defendants' Motion for Judgment on the Administrative Record is **DENIED** as it relates to disability benefits.

### B. Statutory Penalties

Plaintiff's Motion for Summary Judgment, (Doc. 98), on Plaintiff's 29 U.S.C. § 1132(c) claim is untimely and is **DENIED**.[5] However, Defendants move for Judgment on the Administrative Record on this claim.  (Doc. 94). Under Rule 52, the Court should make

---

[4] The Court also finds that there is sufficient evidence to support a finding of arbitrary and capricious decision-making as it relates to Laake's LTD benefit determination.

[5] Plaintiff's Motion for Summary Judgment was filed July 22, 2021—almost a full month after the June 23, 2021 dispositive motions deadline.  When a scheduling order is not met, the party that failed to meet the deadline must show good cause for that failure. *Winter Enters., LLC v. West Bend Mut. Ins. Co.*, No. 1:17-cv-360, 2019 LEXIS 125841, at *6 (S.D. Ohio July 29, 2019).  Plaintiff has not shown good cause for her tardiness, and thus her Motion for Summary Judgment is denied.

findings of fact and render judgment accordingly after the parties have been fully heard on an issue, even if judgment is in favor of the non-moving party. FED. R. CIV. PRO. 52(a). After review, it is evident that the Defendants withheld documents from Plaintiff, and she is entitled to some form of relief.

The primary purpose of § 1132(c) is to punish plan administrators who fail to provide claimants with documents as required under ERISA. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). ERISA requires:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). After thirty days, a plan administrator who fails to provide the documents related to the request may be subject to a maximum $110 penalty per day. 29 U.S.C. § 1132(c); 29 C.F.R. 2575.502(c)(1).

### i. Duty to Provide Plaintiff with "Relevant" Documents

Plaintiff argues without merit that 29 U.S.C. §§ 1024, 1029, 29 C.F.R. §§ 2560.503-1(h)(2)(iii), and (m)(8) establish a duty for W&S to provide all documents "relevant" to her claim. (Doc. 54 at 9; ¶46). But Defendants cannot be penalized under § 1132(c) for a violation of § 2560.503-1. It is worth noting that § 2560.503-1 is a regulation that implements 29 U.S.C. § 1133, not

27

§ 1132. *VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 615 (6th Cir. 1992). Therefore, violations of § 1133 by the plan administrator do not create liability on the plan administrator under § 1132(c). *See Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 853 (N.D. Ohio 2013).

### ii. Duty to Provide Plaintiff with Plan Documents

Defendants nonetheless had a duty to provide Plaintiff with Plan documents upon written request. Plaintiff alleges that Defendants failed to properly do so.

The Sixth Circuit has deliberately limited the scope of § 1024(b)(4) to only the class of documents pertaining to how a plan is operated. *Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1998). The "other instruments under which the plan is established or operated" provision is not meant to be a broad "catch-all." *Cultrona*, 936 F. Supp. 2d at 853-54 (citing *Allinder*, 152 F.3d at 549).

It is worth noting that Plaintiff alleges Defendants failed to provide documents after four different requests: 2016, 2017, November 2019, and November 2020. The requests from 2016 and 2017 are barred by the statute of limitations under ERISA, which courts in this circuit have deemed to be one year. *See Kumar v. Higgins*, 91 F. Supp. 2d 1119, 1123 (N.D. Ohio 2000) (citing *Meade v. Pension Appeals & Rev. Comm.*, 966 F.2d 190 (6th Cir. 1992)). Plaintiff did not allege statutory penalties in her first complaint.

28

Additionally, another complaint of document withholding comes from the discovery process in November 2020. This should have been addressed in a motion to compel, not at this late stage of litigation. Accordingly, the Court only considers the statutory penalty claim as it relates to the November 2019 request.

Turning to this specific request, the Court finds that on November 18, 2019, Plaintiff sent the Benefits Committee a letter asking for all "relevant" documents related to W&S's denial of Laake's disability claims. (Doc. 77 at 461–63). The letter specifically asked for documentation: (1) relied upon in making the benefit determination; (2) submitted, considered, and generated during the decision; (3) demonstrating compliance with the administrative processes; and (4) of statements of policy or guidance with respect to the plan concerning the denied treatment option or diagnosis. (*Id.*). Defendants responded to and acknowledged the request on November 22, 2019. (*Id.* at 465). However, W&S did not send the 2019 Summary Plan Description until February 6, 2020. (*Id.* at 472). W&S finally produced the Trust Agreement on September 10, 2020. (Doc. 96, Danzl Decl. at ¶ 6).

Plaintiff is not entitled to the administrative record she seeks. *See Cultrona*, 936 F. Supp. 2d at 854. However, the request Plaintiff made clearly shows that she sought documentation that showed the "currently operative, governing Plan documents," all of which are "instruments under which the plan is established or

operated" per § 1024(b)(4). *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995). Plaintiff was entitled to this documentation, and Defendants did not provide that information until February 6, 2020, and September 10, 2020.

### iii. Prejudice by Lack of Documentation

A showing of prejudice, although a factor, is not essential for a party to succeed on a statutory penalty claim. *Gatlin v. Nat. Healthcare Corp.*, 16 F. App'x 283, 289 (6th Cir. 2001). Here, Plaintiff argues that failure to provide the requested documents prejudiced her on the grounds that she did not have her doctors submit relevant evidence. The Court agrees that the lack of document production prevented Plaintiff from understanding why her claim is continually denied. For example, nothing in the Plan indicates that she needed objective evidence of her disability. Yet if the internal policies and procedures governing the review of claims had outlined objective evidence as a requirement, Plaintiff could have provided documentation supporting an objective diagnosis. Along the same lines, Plaintiff has never been physically examined by Defendants. Understanding the internal policy as to why that is would also have been helpful in making arguments to the Appeals Committee. Essentially, Plaintiff has been left in the dark as to what W&S would consider the "right" kind of evidence, all while asking Defendants to explain what evidence it was considering when making its determination.

30

The Court also notes Defendants' severe negligence in providing these documents. Following Plaintiff's November 2019 request, W&S waited until February 6, 2020 and September 10, 2020 to finally respond to the request. (Doc. 77 at 472). It appears inexcusable and egregious delays are a frequent issue at W&S as it relates to Ms. Laake's claim. When it finally did respond, W&S only provided the Plan, Summary Plan Description, and a significantly trimmed-down copy of the administrative record, without even addressing the other requests Plaintiff had made. (*Id.* at 474-75). After Plaintiff again asked for the documents in March 2020, Defendants notified Plaintiff that they would be turning over more documents—something they should have done from the start. (*Id.* at 478). Then, in the same letter, Mr. Altenau from W&S tells Plaintiff to "let us know immediately what specific materials are missing." (*Id.*). It is beyond the comprehension of the Court how Plaintiff is supposed to know more than W&S in terms of what internal policy documents exist and are therefore missing from production.

Courts have found an award of the maximum statutory amount of $110 per day in cases where there is evidence of egregious conduct and prejudice. *See Shephard v. O'Quinn*, No.: 3:05-cv-79, 2006 LEXIS 24252, at *10 (E.D. Tenn. Apr. 26, 2006) (awarding the maximum amount when the defendant's behavior was "egregious" and caused plaintiff to lose insurance coverage). The Court, in this

31

case, has great discretion as to how much in statutory penalties to award. *Ciaramitaro v. Unim Life Ins. Co. of Am.*, 628 F. App'x 410, 417 (6th Cir. 2015). But the factors in this case justify the maximum statutory penalty of $110 per day. *See also Gatlin*, 16 F. App'x at 289-90 (granting $100 per day when defendants' delay prevented plaintiff from appealing at the earliest possible time).

As to the actual amount, Plaintiff alleges the delay in the production of Plan documents, Trust Agreement, and internal Plan policies and procedures warrant penalties. Defendants argue that no such internal documents exist. (Doc. 94-1, Resp. to Doc. Req. 5 at 5). Although the Court is dubious that there are no internal documents outlining how the Benefits Committee should evaluate claims, absent more evidence, the Court will not award penalties for these missing, hypothetical documents. Accordingly, the penalties will be limited to the 50 day delay for the Plan and Summary Plan Documents and 267 days for the Trust Agreement. The award therefore totals $40,370.

### C. Motion to Strike Errata Sheets

Plaintiff's Motion to Strike Errata Sheets is **DENIED** as moot.[6]

---

[6] The egregious nature of Defendants' errata sheets is not lost on this Court. The Sixth Circuit makes clear that a deponent is only permitted to correct typographic and transcription errors. *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565-66 (6th Cir. 2009). Yet the changes Plaintiff complains of blatantly attempts to rewrite witness testimony made under oath. Plaintiff's chart identifying the changes included in her Memorandum to Strike Defendants' Errata Sheets is hereby incorporated by reference, (Doc. 101 at 3-11), and the Court makes note of Defendants' misconduct.

### D. Attorney's Fees and Costs

Plaintiff moves for reasonable attorney's fees and costs. Plaintiff filed this in two motions: first, in March 2019 after the Court's initial remand (Doc. 31) and second, in a supplemental motion for appellate attorney's fees and costs. (Doc. 40). The first Motion requested relief totaling $49,594.47. (Doc. 31 at 14). The second Motion requested additional relief totaling $58,800. (Doc. 40 at 8).

When courts decide whether to award attorney's fees, they apply a two-part test. First, courts consider whether the plaintiff has achieved some degree of success on the merits. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010). Next, in the Sixth Circuit, courts consider the following five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan; and (5) the relative merits of the parties' positions. *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). The Sixth Circuit has rejected a presumption that attorney's fees should normally be awarded to the prevailing plaintiff. *Foltice v.*

*Guardsman Prod., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996). Each factor is evaluated in turn.

### i. Success on the Merits

ERISA grants the Court broad discretion to award reasonable attorney's fees and costs. 29 U.S.C. § 1132(g). As a threshold question, the Court must first address whether Plaintiff has achieved "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2158. Given that the Court will enter judgment in the Plaintiff's favor, this clearly satisfies the threshold inquiry of "some degree of success on the merits." *Id.*

### ii. Five-Factor Test

Courts in the Sixth Circuit apply a five-factor test to determine whether to award fees under 29 U.S.C. § 1132(g)(1). *King*, 775 F. 2d at 669; *see also Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006)). No factor is determinative, and the Court must consider each in its analysis. *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).

#### a. Degree of Opposing Party's Culpability

The Sixth Circuit has noted that when a plan administrator engages in "inadequate review" or "otherwise acts improperly in denying benefits," the culpability factor is satisfied. *Shelby Cty. Health Care Corp.*, 581 F.3d at 377. Here, W&S twice engaged in inadequate review.

In addition to the procedural defects, the Court notes Defendants' egregious conduct throughout the course of this litigation. First, Defendants waited more than 270 days from remand to issue Plaintiff a denial. (Doc. 53 at 5). Second, the Defendants' errata sheet "corrections" were quite egregious and out-of-bounds. (*See* Docs. 81; 82). Third, the Defendants failed to respond to Plaintiff's request for documents until she reopened this case. (Doc. 77 at 472). The Court is cognizant of the fact what W&S has resources to expend defending this claim. Defendants' conduct throughout this litigation has not gone unnoticed by the Court, making this factor weigh heavily in favor of Plaintiff.

b. Defendants' Ability to Pay

This factor clearly weighs in Plaintiff's favor. W&S is a Fortune 500 company. As of 2019, the company had over $85.3 billion in assets and a net income of over $764.5 million. *2019 Annual Report*, Western & Southern Financial Group (2020), https://www.westernsouthern.com/-/media/files/wsfg/2019-annual-report.pdf. Granted, a party's financial ability to pay a fee award, even if undisputed, "should not be dispositive when examination of all other relevant factors indicated that fees should not be awarded." *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 557–58 (6th. Cir. 1987).

c. Deterrent Effect

The Sixth Circuit has routinely noted that the deterrence factor involves consideration of the deterrent effect on other plan administrators. *Foltice*, 98 F.3d at 937. This factor is more important when the defendants have "the sort of culpability that warrants punishment in [the claimant's] case or deterrence in others." *Id.* For example, misinterpreting plan documents carries less culpability than terminating benefits without any supporting medical evidence. *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 532 (6th Cir. 2008).

Here, W&S failed significantly in its fiduciary dealings, carrying a high degree of culpability. As discussed earlier, Defendants impermissibly delegated discretionary authority under the Plan. They also improperly interpreted the Plan to require objective proof where it never defined the term. The Administrators also failed to conduct a physical exam of Plaintiff despite denying her benefits for chronic pain. Even more, W&S kept Plaintiff waiting 270 days on remand for a decision. All these findings are evidence of egregious procedural failings at W&S. The payment of attorney's fees should encourage other plan administrators to evaluate internal policies to ensure a more full and fair review. Accordingly, this factor also weighs in favor of the Court awarding attorneys' fees and costs—although not as strongly as the first two.

d. Common Benefit Sought or Significant Legal Questions Answered

Plaintiff brought this lawsuit for personal benefits, not for the common benefit of other W&S beneficiaries. Even when a claimant "arguably obtained a common benefit for all plan participants in the form of deterring the plan administrator from making similarly unreasonable decision in the future . . . the deterrent-effect and common-benefit factors are separate inquires . . . ." *Gaeth*, 538 F.3d at 533.

This factor weighs against Plaintiff. Plaintiff did not seek to obtain a common benefit for all W&S participants. Plaintiff has also failed to establish, or even argue, that any other participant was in the same position as Laake. Nor did this case resolve any significant legal questions regarding ERISA.

e. Relative Merits of the Parties' Positions

As discussed above, the merits of Plaintiff's case are strong, and this factor also weighs in favor of granting attorney's fees. The record contains both objective and subjective evidence of Plaintiff's disability. Additionally, both Plaintiff's treating physicians and W&S's independent reviewers have made findings that Plaintiff cannot perform sedentary work. Even if the Court were to apply the less stringent arbitrary and capricious standard, there are still procedural defects. Plaintiff is also entitled to statutory penalties. Additionally, Plaintiff's Motion to Strike Defendants' Errata Sheets was also strong, as Defendants rewrote

37

deposition testimony in violation of clearly established Sixth Circuit case law.  Considering the above factors, the Court finds in favor of an award of attorney's fees to Plaintiff.  Although not every factor weighs in favor of Plaintiff, taking the five factors together, the scale tips in favor of Plaintiff.

### iii. Reasonableness of the Hours, Rate, and Costs

Courts review attorney's fees by asking "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).  "The most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  It is worth noting that Plaintiff has only filed a motion for attorney's fees as it relates to the first district court appearance of this matter and the subsequent appeal and remand.  Plaintiff's attorney has not filed a motion for attorney's fees that includes hours worked beyond January 24, 2020. Plaintiff's counsel spent approximately 161.7 hours on Plaintiff's initial claim and an additional 196 hours on her Sixth Circuit appeal and remand to W&S.  District courts in the Southern District have found this number of hours to be reasonable. *See Myers v. Bricklayers & Masons Local 22 Pension Plan*, No. 3:13-cv-75, 2014 U.S. Dist. LEXIS 171066, at *13–20 (S.D. Ohio Dec. 10, 2014)

(finding that 253.3 hours of work at only the district court level in an ERISA case was reasonable).

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate the lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Plaintiff's counsel charges a rate of $300 per hour. Courts within the Southern District recognize that ERISA is a niche area of law that requires a certain skill level to render proper legal services. *Javery v. Lucent Techs. Inc. Long-Term Disability Plan for Mgmt. or LBA Emps.*, No. 2:09-CV-8, 2014 WL 2779427, at *7-8 (S.D. Ohio June 19, 2014). Counsel, Claire W. Bushorn Danzl, has over ten years of experience practicing ERISA law. (Doc 31-1, Denzl Decl. at 2, ¶3). Courts have consistently held that this is a reasonable rate. *See e.g.*, *Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2018 WL 5312687, at *6 (S.D. Ohio Oct. 25, 2018) (allowing a $350 rate for an attorney with twelve years of ERISA experience). Counsel's rate is entirely reasonable.

Plaintiff also seeks $400 in litigation fees for filing expenses. This too is reasonable. Courts in this circuit have awarded similar amounts. *See, e.g.*, *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 854 (S.D. Ohio 2014) (awarding $455 filing fee); *Disabled Patriots of Am., Inc.*, 424 F.

Supp. 2d 962, 969 (E.D. Mich. 2006) (awarding $500 in other client costs). The Court is well within its discretion to award Plaintiff $400 for filing expenses.

Defendants argue that Plaintiff's time sheets are too vague and thus the Court should reduce the amount of attorney's fees awarded. The Sixth Circuit has noted that attorneys "have an obligation to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). Time entries cannot contain vague descriptions such as "research" or "office conference." *Black v. Lojac Enter., Inc.*, No. 96-5654, 1997 WL 377051, at *3 (6th Cir. 1997).

Plaintiff counsel's time sheets are not vague. Any time she meets with Plaintiff, she notes what the meeting was regarding. (Docs. 31-1;40-1). She clearly annotated what specifically she was researching at a given point. (*Id.*). It is true that there are some entries where she bills time where she "receive[s] and review[s] email from opposing counsel" without any reference to what the email is regarding. (Doc. 40-1 at 7). But this is the only form of vagueness that the Court finds. Furthermore, Plaintiff's counsel only bills for 0.1 or 0.2 hours when she uses this time entry. Given that the parties communicated primarily via email, and Plaintiff's counsel did not spend an undue amount

of time on these emails, the Court is unpersuaded by Defendants'
argument that the time sheets are impermissibly vague.
Accordingly, the attorney's fees do not need to be reduced.

*CONCLUSION*

Therefore, having reviewed this matter, and the Court being
advised,

**IT IS ORDERED** that:

(1) Plaintiff's Motion for Judgment on the Administrative
Record (Doc. 95), be, and is hereby **GRANTED** as it relates
to Plaintiff's long-term disability determination.

(2) The Court **GRANTS** Plaintiff statutory penalties under 29
U.S.C. § 1132(c), pursuant to Rule 52(a).

(3) Defendants' Motion for Judgment on the Administrative
Record (Doc. 94), be, and is hereby **DENIED.**

(4) Plaintiff's Motion for Summary Judgment (Doc. 98), be,
and is hereby **DENIED.**

(5) Plaintiff's Motion for Attorney Fees (Doc. 31) and
Supplemental Motion for Attorney's Fees (Doc. 40), be,
and is hereby **GRANTED.**

(6) Plaintiff's Motion to Strike Errata Sheets (Doc. 101),
be, and is hereby **DENIED AS MOOT.**

(7) Plaintiff shall file any remaining motions **ON OR BEFORE
DECEMBER 1, 2021.**

This 5th day of November 2021.



Signed By:

*__William O. Bertelsman__*

**United States District Judge**